(No. 49499          )

ROGER FITZGERALD *et al.,* Appellees, v. CHICAGO TITLE AND TRUST COMPANY, Appellant.

*Opinion filed May 26, 1978.*

KLUCZYNSKI, J., took no part.

John C. Christie, Jr., Francis J. Higgins, and William R. Dillon, of Chicago (Bell, Boyd, Lloyd, Haddad & Burns, and Concannon, Dillon, Snook & Morton, of counsel), for appellant.

Robert S. Atkins and Eugene I. Pavalon, of Chicago (Freeman, Atkins & Coleman, Ltd., and Asher, Greenfield, Goodstein, Pavalon & Segall, Ltd., of counsel), for appellees.

William J. Scott, Attorney General, of Springfield (Thomas J. Ciechanowski, Assistant Attorney General, of Chicago, of counsel), *amicus curiae.*

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Roger J. Fitzgerald, Joanne Fitzgerald, Charles Searcy and Deama Searcy, appealed from the judgment of the circuit court of Cook County entered in favor of defendant, Chicago Title and Trust Company, upon allowance of its motion to dismiss plaintiffs' complaint. The appellate court reversed (46 Ill. App. 3d 526), and we allowed defendant's petition for leave to appeal. Plaintiffs, suing "individually and on behalf of a class of persons similarly situated," alleged in their complaint that plaintiffs Fitzgerald, as the sellers of real estate, and plaintiffs Searcy, as purchasers of real estate, had through their agents, respectively South Chicago Savings Bank and Chicago City Bank and Trust Company, ordered preliminary reports of title and mortgage insurance policies from defendant; that in violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*) defendant had submitted to the financial institutions invoices reflecting "customary seller's charges" and "customary buyer's charges" and did not disclose that defendant "paid or otherwise granted" to the financial institutions "a rebate, discount or allowance of ten percent (10%) with respect to such charges and for which said plaintiffs were not reimbursed"; that plaintiffs represent a class of persons who either sold or purchased real estate in transactions wherein defendant made the

same type of allowances and rebates without disclosing those payments on the face of its invoices, or by any other means; that defendant's conduct constituted a deceptive trade practice under the provisions of the Consumer Fraud and Deceptive Business Practices Act; and that plaintiffs are entitled to damages, an injunction and other relief. The circuit court allowed defendant's motion and dismissed the complaint "with prejudice." Holding that under section 2 of the Act plaintiffs' complaint stated a cause of action, the appellate court reversed the judgment and remanded the cause for further proceedings.

The Consumer Fraud and Deceptive Business Practices Act in pertinent part provides:

> "Sec. 1. ***
>
> (f) The terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." (Ill. Rev. Stat. 1973, ch. 121½, par. 261(f).)
>
> "Sec. 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been mislead, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1973, ch. 121½, par. 262.)

"Sec. 10a. (a) Any person who suffers damage as a result of a violation of Section 2 of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual damages or any other relief which the court deems proper." Ill. Rev. Stat. 1973, ch. 121½, par. 270a.

The Uniform Deceptive Trade Practices Act in pertinent part provides:

"Sec. 2. A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

*　*　*

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ill. Rev. Stat. 1973, ch. 121½, par. 312(12).

Defendant contends first that the appellate court misconstrued the statutory directive that "In construing this section [section 2] consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act" (Ill. Rev. Stat. 1973, ch. 121½, par. 262). It argues that "The amended Consumer Fraud Act directs Illinois courts to consider 'interpretations relating to section 5(a) of the Federal Trade Commission Act,' not to interpret section 5(a)." It argues further that the appellate court nevertheless interpreted section 5(a) of the Federal Trade Commission Act, and in so doing erroneously concluded that "the bare allegation of a violation of a Federal antitrust statute, *viz.*: Section 2(c) of the Robinson-Patman Act was sufficient to state a cause of action." It argues further, "The Robinson-Patman Act, together with other Federal antitrust laws, did not become the law of Illinois through the 'Back Door' of the Amended Consumer Fraud Act." Defendant argues too that since the initial adoption of the Illinois Antitrust Act (Ill. Rev. Stat. 1977, ch. 38, par. 60—1 *et seq.*), when the General Assembly has determined that additional competi-

tive prohibitions are warranted, "it has done so clearly and directly by amendments to the Illinois Antitrust Act. Thus, in 1969 it adopted Public Act 76–208, which amended Section 3 by adding the present subsection (4) of the Act, Ill. Rev. Stat. ch. 38, sec. 60–3(4) (1975), a counterpart to Section 3 of the Clayton Act." Defendant also contends that by its enactment of the amendments effected by Public Act 76–208 the General Assembly rejected legislation similar to section 2(c) of the Robinson-Patman Act.

We do not agree. From our examination of its opinion we conclude that the appellate court recognized and correctly followed the rule elucidated in *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, that Federal authorities be considered where there is a lack of Illinois precedent but did not, as contended by defendant, construe section 2 of the Act to mean that every violation of section 2(c) of the Clayton Act (15 U.S.C. sec. 13(c) (1976)) was an unfair or deceptive practice. Furthermore, we find no authority to support defendant's argument that the General Assembly expressly or by implication rejected legislation similar to section 2(c) of the Clayton Act.

We consider next defendant's contention that under the appellate court's interpretation, section 2 of the Consumer Fraud and Deceptive Business Practices Act is rendered so vague, indefinite and uncertain as to be violative of "substantive due process of law." It argues that in *Freeman v. Chicago Title & Trust Co.* (7th Cir. 1974), 505 F.2d 527, the court of appeals held that section 2(c) of the Clayton Act does not apply to intangibles; that in *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, it was held that no common law action arose out of the payment of the same type of rebate as is alleged here; and that absent some prior interpretation of the statute holding that the rebate payments made were unlawful, defendant was insufficiently advised as to what

was proscribed by the statute, and was thus deprived of due process. We do not agree.

Section 5(a) of the Federal Trade Commission Act (15 U.S.C. sec. 45(a) (1976)) in pertinent part provides:

"(a)(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(2) The Commission is empowered and directed to prevent persons, partnerships, or corporations *** from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."

In *Federal Trade Com. v. Motion Picture Advertising Service Co.* (1953), 344 U.S. 392, 394-95, 97 L. Ed. 426, 430, 73 S. Ct. 361, 363, the court said:

"The 'unfair methods of competition,' which are condemned by section 5(a) of the Act, are not confined to those that were illegal at common law or that were condemned by the Sherman Act. *Federal Trade Commission v. Keppel & Bro.*, 291 U.S. 304, [78 L. Ed. 814, 54 S. Ct. 423]. Congress advisedly left the concept flexible to be defined with particularity by the myriad of cases from the field of business. [291 U.S. 304, 310-12, 78 L. Ed. 814, 818-19, 54 S. Ct. 423, 425-26.] It is also clear that the Federal Trade Commission Act was designed to supplement and bolster the Sherman Act and the Clayton Act (see *Federal Trade Commission v. Beech-Nut Co.*, 257 U.S. 441, 453, [66 L. Ed. 307, 313, 42 S. Ct. 150, 154])—to stop in their incipiency acts and practices which, when full blown, would violate those Acts ***."

In *People v. Raby* (1968), 40 Ill. 2d 392, in rejecting the contention that sections 26—1(a) and 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, pars. 26—1(a), 31—1) were invalid by reason of vagueness and

overbreadth, the court said:

> "It is true that section 26—1(a) does not attempt to particularize all of the myriad kinds of conduct that may fall within the statute. The legislature deliberately chose to frame the provision in general terms, prompted by the futility of an effort to anticipate and enumerate all of the methods of disrupting public order that fertile minds might devise." (40 Ill. 2d 392, 396.)

Here, too, the General Assembly, "prompted by the futility of an effort to anticipate and enumerate all of the methods" which might be utilized to commit unfair methods of competition and unfair or deceptive acts or practices, apparently chose to frame the provision in general terms and permit construction and implementation of the statute on a case-by-case basis.

Assuming, *arguendo,* an earlier interpretation of section 2 of the Consumer Fraud and Deceptive Business Practices Act and defendant's right to rely thereon, its reliance on *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, and *Freeman v. Chicago Title & Trust Co.* (7th Cir. 1974), 505 F.2d 527, is misplaced. *Janes,* without reference to section 2, held that allegations charging the defendant First Federal Savings and Loan Association with having failed to pay over to the plaintiffs certain rebates received under circumstances similar to those alleged in this case stated a cause of action. Concerning the defendant Chicago Title and Trust Company, *Janes* holds that absent a contractual relationship between that defendant and the plaintiffs, no cause of action was stated. In *Freeman,* holding that the Clayton Act did not apply to title insurance, the court said, "We, of course, express no opinion on the propriety of the rebate practices described in the complaint and, specifically, on whether such practices might be prohibited by other state or federal laws." (505 F.2d 527, 534.) The

Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 312), after enumerating 11 types of deceptive trade practices, provides in section 2(12) that a person engages in a deceptive trade practice when he engages in conduct which similarly to the activities specifically listed "creates a likelihood of confusion or of misunderstanding." We note parenthetically that under the provisions of the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. sec. 2607 (1976)) the type of rebate involved here is specifically prohibited. The appellate court did not err in holding that the payment of rebates in the manner alleged in plaintiffs' complaint can, under section 2 of the Act, be an unfair or deceptive act or practice.

Plaintiffs concede that prior to the amendment of section 2 of the Consumer Fraud and Deceptive Practices Act, effective October 1, 1973, the complaint would not have stated a cause of action. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398.) It is plaintiffs' position, however, that under the plain language of the statute, without regard to the Federal authorities, the complaint states a cause of action. The Attorney General, as *amicus curiae,* has filed a brief urging affirmance of the appellate court judgment.

Because the judgment was entered upon allowance of defendant's motion to dismiss, all facts properly pleaded in the complaint must be taken as true. (*Acorn Auto Driving School, Inc. v. Board of Education* (1963), 27 Ill. 2d 93, 96.) This court has repeatedly held that a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover. (*Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298; *Winnett v. Winnett* (1974), 57 Ill. 2d 7; *Miller v. DeWitt* (1967), 37 Ill. 2d 273.) The complaint alleges that by the payment of commissions, discounts, allow-

ances or credits "to savings and loan associations, banks, real estate brokers, attorneys and other persons, firms or corporations acting as agents, representatives or intermediaries for and on behalf of plaintiffs and members of plaintiffs' class" and the intentional, deliberate and deceptive concealment and failure to disclose that such payments were made, defendant had engaged in an "unfair method of competition and unfair and deceptive trade practice." The complaint alleges further that invoices submitted by defendant enumerated "customary buyers' charges" and "customary sellers' charges" and that plaintiffs, who did not know that defendant had made the rebates, discounts or allowances, paid the amounts shown in the invoices, and were not reimbursed; that plaintiffs were required to pay unreasonable and unnecessary charges for defendant's services and as the result suffered damages. Under the facts alleged, if defendant's actions were taken with the intent that others rely upon the invoices which did not disclose the fact that a rebate was being paid, and plaintiffs paid charges which they may have been entitled to recoup from their respective agents (see *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398), the complaint states a cause of action under section 2 of the Consumer Fraud and Deceptive Business Practices Act.

For the reasons stated the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.