Julio DeLEON and Norma DeLeon, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BENEFICIAL CONSTRUCTION COMPA-NY; George Zachary; Guaranty Bank, S.S.B.; Guaranty Home Equity Corpora-tion, d/b/a/ GB Home Equity; Dolphin Mortgage Corporation; and George Da-tro, Defendants.

No. 97 C 40.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 16, 1998.

860

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Richard Joseph Doherty, Edelman & Combs, Chicago, IL, for Julio DeLeon, on behalf of themselves and all others similarly situated, Norma DeLeon, plaintiffs.

Frank John Kokoszka, John Ludwik Janczur, Kokoszka & Janczur, Chicago, IL, for Beneficial Const. Co. and George Zachary, George Datro, defendants.

Robert M. Hatch, Phillip A. Bock, Lovell, White & Durrant, George A. Platz, Lovell, White & Durrant, Chicago, IL, for Guaranty Bank, S.S.B. and Guaranty Home Equity Corp.

Donna C. Thomas, Law Office of Donna Thomas, Naperville, IL, Gilbert C. Schumm, Law Offices of Gilbert C. Schumm, Northbrook, IL, for Dolphin Mortgage Corporation.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

This is a class action lawsuit brought by plaintiffs Julio and Norma DeLeon (the DeLeons) on behalf of themselves and all others similarly situated. Plaintiffs brought the suit against the named defendants alleging violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607, and accompanying regulations, 24 C.F.R. § 3500.14(c), the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/2 et seq., and the Truth in Lending Act (TILA), 15 U.S.C. § 1635, in addition to breach of contract and breach of fiduciary duty, all resulting from their purchase of substantial home improvements and the financing thereof via a second mortgage.

The action consists of ten counts. In Count I, plaintiffs allege that defendants Guaranty Bank (Guaranty Bank), GB Home Equity (GB Home Equity), Dolphin Mortgage (Dolphin) and George Datro (Datro) violated RESPA, 12 U.S.C. § 2607 and 24 C.F.R. § 3500, by collecting referral fees in connection with real estate settlements. In Count II, plaintiffs allege that all defendants violated Section 2 of ICFA, 815 ILCS 505/2 et seq., by engaging in the unfair and deceptive act of creating a scheme designed to generate unlawful referral fees and kickbacks in violation of federal law. In Count III, plaintiffs allege that defendant Beneficial Construction Company (Beneficial) breached the construction contract it had with plaintiffs. In Count IV, plaintiffs allege that Beneficial and George Zachary (Zachary) violated Section 2 of ICFA, 815 ILCS 505/2 et seq.,

by arranging the financing for the construction project on plaintiffs' home and by taking payment on the construction project without completing the job. In Count V, plaintiffs allege that Dolphin and Datro breached the fiduciary duties they owed to plaintiffs after being hired to assist in financing the improvements to plaintiffs' home. In Count VI, plaintiffs allege that defendants Guaranty Bank and GB Home Equity violated the Truth in Lending Act, 15 U.S.C. § 1635, by failing to make federally-mandated disclosures prior to having plaintiffs sign a consumer credit contract. In Count VII, plaintiffs allege that defendants Guaranty Bank and GB Home Equity violated the same section of TILA by not allowing plaintiffs to rescind their consumer credit contract with the defendants. In Count VIII, plaintiffs allege that defendant Beneficial violated the same section of TILA by failing to provide plaintiff with federally-mandated disclosures. In Count IX, plaintiffs allege that defendants Beneficial, Zachary, Guaranty Bank and GB Home Equity violated ICFA, 815 ILCS 505/2 *et seq.*, and the Illinois Retail Installment Sales Act (RISA), 815 ILCS 405/1 *et seq.*, by engaging in the unfair and deceptive act of attempting to collect a delinquent fee on a retail installment contract formed in violation of Illinois law. In Count X, plaintiffs allege that defendants violated ICFA, 815 ILCS 505/2 *et seq.*, by failing to disclose and/or misrepresenting the interest rate on plaintiffs' contract, by stating that plaintiffs would pay no interest on the loan, when, in fact, that was not the case, and by including in plaintiffs' contract unconscionable credit provisions in violation of Illinois law.

In the motions presently before the court defendants Zachary, Datro and Dolphin have each individually submitted a motion to dismiss all claims against them. In addition, plaintiffs have indicated they wish to voluntarily dismiss Count II. Finally, it should be noted that plaintiffs have informed the court that they will move to voluntarily dismiss Guaranty Bank, although they have not yet done so.

We grant plaintiffs' motion to dismiss Count II. In addition, this memorandum addresses each of the instant motions to dismiss, specifying, when appropriate, to which defendant our holdings apply. We conclude that Dolphin's motion to dismiss is denied in its entirety, Datro's motion to dismiss is granted in part and denied in part, and Zachary's motion to dismiss is granted in its entirety.

### BACKGROUND

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, we accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Travel All Over World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir.1996). Read in this light, the facts in this case are as follows:

On April 16, 1996, the DeLeons hired Beneficial to do some work on their home in Chicago, Illinois. Specifically, Beneficial agreed to level the basement floor, create a basement apartment, install central air-conditioning and make improvements to the kitchen for a contract price of $22,000. The DeLeons gave a $1,000 down payment check to Zachary, the president of Beneficial, and signed a document titled "Agreement Between Owner and Contractor," which provided that the remaining $21,000 cost would be financed.

In order to arrange the financing for the project, Beneficial referred plaintiffs to a mortgage broker, George Datro, who worked for Dolphin Mortgage. According to the plaintiffs, this was not the first time that Zachary had referred his construction clients to Dolphin in order to assist them in the financing for construction projects performed by Beneficial. Datro was hired to help the DeLeons find favorable financing and it was agreed he would be paid a commission amounting to approximately 8% of the loan sought by the DeLeons. Plaintiffs allege, however, that Datro never shopped the market for the best mortgage terms. Instead, he referred the DeLeons to two banks, Guaranty Bank and GB Home Equity, with whom he either had some sort of standing referral agreement or whom he had pre-selected as a lender (as discussed later in this order, plaintiffs contradict themselves on this point). In any event, plaintiffs claim that as a result of

Datro's fraudulent acts, not only did they not receive the most favorable mortgage terms available to them but they were defrauded out of the 8% commission they paid to Dolphin.

On May 29, 1996, Guaranty Bank and GB Home Equity loaned approximately $44,000 to the DeLeons, $3,520 of which was disbursed for the purpose of paying Dolphin's commission. The promissory note and the accompanying disclosure forms list both Guaranty Bank and GB Home Equity as the lender. Guaranty Bank and GB Home Equity issued four checks for $10,500 each, two of which were made out jointly to the DeLeons and Beneficial Construction as co-payee. Plaintiffs gave these checks to Beneficial.

After the financing was completed, Beneficial started work on the DeLeons' home on June 11, 1996. They continued to work until July 19, 1996, when it rained heavily in the Chicago area and the DeLeon basement flooded, causing extensive damage to the basement interior. Shortly after the flooding, Beneficial stopped working on the De-Leon home and abandoned the project before it was completed. Plaintiffs then discovered that much of the work that had been performed was defective and that the materials used were of inferior quality and did not meet industry standards. Guaranty Bank and GB Home Equity informed plaintiffs that the mortgage loan would have to be repaid notwithstanding the defects in the so-called improvements performed by Beneficial. Accordingly, the DeLeons brought the instant action and have asked to be certified as a class under Federal Rule of Civil Procedure 23. The class certification issue has yet to be decided.

### DISCUSSION

**I. A Preliminary Distinction: Rule 12(b)(6) Motion to Dismiss vs. Rule 56(c) Motion for Summary Judgment**

As detailed above, defendants Zachary, Datro and Dolphin have each filed a motion

to dismiss whichever of the plaintiffs' claims apply to them, on the grounds that in each instance plaintiff has failed to state a claim for which relief may be granted. *See* Fed. R.Civ.P. 12(b)(6). Attached to both Datro's and Dolphin's motions, as well as plaintiffs' response to Zachary's motion, are documentary exhibits containing matters not included in plaintiffs' complaint or the exhibits attached thereto. Rule 12(b) provides that whenever a party enters a motion to dismiss for failure to state a claim upon which relief can be granted that includes matters outside the pleadings, the court must either exclude from consideration the extraneous materials presented or treat the motion as one for summary judgment. Fed.R.Civ.P. 12(b); *see also Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Edward Gray Corp. v. National Union Fire Ins. Co.*, 94 F.3d 363, 366–67 (7th Cir.1996). The decision on which course to choose in this matter is entirely within the court's discretion.

We will continue to treat the various motions to dismiss as such. Accordingly, for purposes of ruling on the present motion we explicitly exclude from our consideration all exhibits attached to the briefs on this matter that were not part of the plaintiff's complaint.[1]

### II. Standard of Review

In order to have a claim dismissed under Rule 12(b)(6) the moving party must meet a high standard. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not its merits. *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). A complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove

---

1. The documents included in the complaint are (1) a photocopy of the Agreement between Owner and Contractor (Exhibit A); (2) a photocopy of the front and back of the $1,000 check the De-Leons used as down-payment (Exhibit B); (3) photocopy of the loan brokerage agreement between Dolphin Mortgage and the DeLeons (Ex-

hibit C); (4) a photocopy of the promissory note for $44,000 loan taken by the DeLeons from HB Home Equity and Guaranty Bank S.S.B. (Exhibit D); (5) a photocopy of the settlement statement issued in conjunction with the DeLeon loan from Guaranty Banks S.S.B. and GB Home Equity (Exhibit E).

no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In order to withstand a motion to dismiss a complaint must allege facts which sufficiently set forth the essential elements of the cause of action. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988). Generally, "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985).

### III. Datro and Dolphin Motions to Dismiss Counts I and IV

#### A. Count I: The Real Estate Settlement Procedures Act

In Count I, plaintiffs allege that defendants Dolphin Mortgage and George Datro violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 and 24 C.F.R. § 3500.14(c). RESPA permits payment of fees during the real estate settlement process only to persons (and entities) who actually render services or provide goods to the consumer. 12 U.S.C. § 2607(c)(2); *see also* 24 C.F.R. § 3500.14(g)(iii) ("Section 8 of RESPA [12 U.S.C.A. § 2607] permits ... [a] payment by a lender to its duly appointed agent or contractor for services actually performed in the origination, processing, or funding of a loan").[2] The statute prohibits the payment of fees or kickbacks in exchange for the referral of business incident to a real estate settlement. 12 U.S.C. § 2607(a). In short, the statute is designed to prevent the payment of fees during the real estate purchase and lending process to people who do nothing but recommend that the customer (the person buying the property or taking out the mortgage) use a certain lender, mortgage broker, or real estate agent simply because the person making the recommendation has a relationship with the person being recommended. The purpose of this is to protect unknowing consumers from paying fees and commissions to people who claim to

render services but in fact operate by merely passing customers through to pre-selected lenders or agents. *See* 12 U.S.C. § 2601(b)(2); *United States v. Gannon*, 684 F.2d 433 (7th Cir.1981) (holding that 2607(b) prohibits charges for which no services are rendered), *cert. denied* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 248 (1981). Preventing such fees, of course, protects customers and results in lower home mortgage costs for consumers, which was one of the primary purposes for which Congress passed RESPA. 12 U.S.C. 1601(b).

A mortgage broker's job is to help his customers find a lender that can provide a mortgage with terms best suited to the customer's needs. In this case Dolphin and Datro brought the DeLeons to GB Home Equity and Guaranty Bank, sister companies in the lending business that together loaned more than $40,000 to the DeLeons. In exchange for Datro's "service" of locating these lending companies, the DeLeons paid Dolphin $3,520 (approximately 8% of the principal amount of the loan), a sum which the DeLeons obtained by increasing their mortgage loan. The DeLeons now claim, however, that Dolphin and Datro never looked for favorable financing. Rather, in their complaint they contend that Dolphin, its agents, GB Home Equity and Guaranty Bank had some sort of undisclosed, standing arrangement whereby Dolphin would automatically bring its customers to these lending companies, in exchange receiving a commission off the top of the resulting loan. Thus, although Dolphin would appear to be performing legitimate brokerage services recognized as compensable by RESPA, it would in fact be acting as nothing more than a referral service for preselected lenders.

#### 1. Dolphin Motion to Dismiss Count I

Dolphin argues that the plaintiffs have failed to state a claim because their complaint alleges only that Dolphin imposed an

---

2. Defendants Dolphin Mortgage and George Datro first moved to dismiss Count I on the grounds that RESPA applies only to first liens on real property and not to second mortgages such as the one at issue in this case. Although at one time RESPA did in fact have such a restriction,

in 1992 RESPA was amended to apply to "any loan ... which is secured by a first or subordinate lien on residential real property...." 12 U.S.C. § 2602(1)(A). Thus, the motion will obviously not be granted on that ground.

"excessive charge" and fail to make allegations specifically mentioning "kickbacks" or "referral fees" which are prohibited by Section 2607. We disagree.

■ Although we acknowledge that plaintiff's complaint is inartfully drafted,[3] it seems likely in this instance that Dolphin has likewise erred by failing to carefully read the complaint. It is true that in Count I plaintiffs allege only that the 8% brokerage fee taken by Dolphin was "excessive" and did "not correspond" to the "nominal" or "purported" services performed by Dolphin (Cplt. ¶¶ 69–70). That section, however, incorporates by reference paragraphs 41–49 of the complaint, in which plaintiffs allege that the mortgage brokerage fee charged by Dolphin through Datro was a "sham" because Dolphin "received a fee for each loan transaction completed without having performed any mortgage broker services" (Cplt. ¶¶ 41–42). Specifically, plaintiffs allege that Dolphin "did not seek out the best financing terms for plaintiffs" and has the practice of receiving "charges that are merely for referral of business or are for services that are not actually performed or are only nominally performed in connection with the settlement of real estate transactions" (Cplt. ¶¶ 45–47).

We find these allegations more than sufficient to state a claim that a charge was issued for services not actually rendered, thereby constituting a "referral fee" or "kickback" charge, as prohibited by Section 2607 of RESPA. Accordingly, Dolphin's motion to dismiss Count I is denied.

## 2. Defendant Datro

Datro moves to dismiss Count I on a slightly different theory than his co-defendant Dolphin. Datro contends that plaintiffs have no claim against him because in voluntarily dismissing Guaranty Bank plaintiffs acknowledged that there is no proof that a "business arrangement" was in effect involving Guaranty Bank. Datro does not tell the court why the lack of such a business arrangement defeats plaintiffs' claim, whether the existence of a business arrangement is an essential element of the claim or provide any support for his contention whatsoever. We take this opportunity to remind the parties to this action that it is their burden to support their motions and pleadings with relevant arguments and authority.

■ In any event, RESPA provides:
No person shall give and no person shall accept any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service ... shall be referred to any person.
12 U.S.C. § 2607(a). The statute plainly requires that there be some sort of business agreement between the party giving and the party receiving the fee. In Count II, plaintiffs originally alleged that there was such an agreement between Dolphin, Datro, Guaranty Bank and Guaranty Home Equity, whereby under the guise of rendering mortgage brokerage services Dolphin would refer clients to Guaranty Bank and Guaranty Home Equity, and in exchange those lenders would approve a loan for Dolphin's fee. Datro's motion to dismiss is based on the fact that plaintiffs later state that they have "received information from defendant Guaranty Bank, S.S.B. which proves that no business arrangement as contemplated by 16 C.F.R. § 433.1 exists here" (Plf.Resp. to Dolphin's and Datro's Mots. to Dismiss). The cited Code of Federal Regulations refers to federal consumer protection laws and defines a business arrangement as "Any understanding ... or arrangement, formal or informal, between a creditor and a seller, in connection with the sale of goods or services to consumers or the financing thereof." 16 C.F.R. § 433.1. The issue then becomes whether the "business arrangement" that plaintiffs ac-

---

3. In fairness, the papers submitted by *both* parties are completed in such poor form and are so packed with erroneous citations and typographical errors that at certain points they are almost incomprehensible. Instead of accompanying the motions to dismiss with memoranda in support, the defendants in each instance submitted motions which themselves were sporadically littered with inaccurate citations to cases that more often than not appear inapplicable to the present action. Plaintiffs' memoranda in response were also not carefully drafted and are largely unresponsive to the motions to dismiss. In the future, both parties may wish to exercise somewhat more diligence in their drafting as the court might be less willing to do their work for them.

knowledge *did not exist* for purposes of Count II is the same as the "agreement or understanding" which plaintiffs *must allege existed* in order to state a claim in Count I.

We find that at a minimum plaintiffs' complaint on this matter is in need of some substantial clarification. Plaintiffs' comment in its memorandum in response clearly seems to disavow the existence of the very same business relationships that must necessarily exist in order for us to hold that Count I is facially valid. Accordingly, we grant Datro's motion to dismiss Count I without prejudice and with leave to amend within 20 days.

## B. Count V: Breach of Fiduciary Duty

In Count V plaintiffs allege that, as the their mortgage brokers, Dolphin and Datro were in a fiduciary relationship with them and consequently owed them typical fiduciary duties such as honesty and diligence. They allege that Dolphin and Datro breached these duties when they failed to act in plaintiff's best interest in finding a mortgage.

Although Dolphin and Datro purportedly move to dismiss this count, the briefs they submitted attack only the factual contentions of plaintiffs' complaint. In fact, Dolphin's motion reads more like an answer in that instead of outlining the necessary elements of plaintiffs' case and then demonstrating on which one plaintiffs have failed to meet their burden, it simply admits and denies certain statements of fact in the complaint. Such contentions are insufficient to demonstrate that plaintiffs have failed to state a claim because for purposes of such a motion the court accepts all well-pled allegations of the complaint as true. *Miree v. DeKalb County,* 433 U.S. 25, 27, n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Moreover, any factual ambiguities are construed in favor of the plaintiff. *Curtis v. Bembenek,* 48 F.3d 281, 283 (7th Cir.1995). Accordingly, both Dolphin's and Datro's motions to dismiss Count V are denied.

## IV. Counts IV, IX, X: Defendant Zachary

Defendant George Zachary, the president and controlling shareholder of Beneficial Construction,[4] is named as a defendant in Counts IV, IX and X.[5] All of these claims are based on the Illinois Consumer Fraud Act (ICFA). Zachary has filed a motion to dismiss all three counts.

## A. Count IV: The Illinois Consumer Fraud Act

In Count IV plaintiffs allege that Zachary and Beneficial Construction engaged in unfair and deceptive practices in violation of the Illinois Consumer Fraud Act by arranging the financing for the construction work in such a way that plaintiffs would be left without recourse in the event the defendants took plaintiffs' money and abandoned the work.

ICFA generally prohibits the use of unfair or deceptive practices in the conduct of any trade or commerce and entitles any consumer harmed by such practices to bring an action against the wrongdoer. 815 ILCS 505/2. A claim for an ICFA violation will be deemed sufficient for purposes of a defendant's motion to dismiss if plaintiff alleges that (1) the defendants engaged in a deceptive act or practice, (2) the defendants intended plaintiffs to rely on the deception and (3) the deception occurred in the course of conduct involving trade or commerce. *Hernandez v. Vidmar Buick Co.,* 910 F.Supp. 422, 427 (N.D.Ill.1996).

Zachary first argues that Count IV should be dismissed on the ground that plaintiffs have failed to state a claim against him as an individual defendant. He asserts that he cannot be held personally liable for the actions of his corporation, Beneficial Construction. A simple reading of the statute, however, reveals that this argument is without merit. ICFA clearly provides that "any person" may be sued under its provisions, including "any agent, employee, salesman, partner, officer, director, member, [or] stockholder" of a corporation that is also being

---

4. Beneficial Construction is not party to Zachary's motion to dismiss.

5. Zachary was also named as a defendant in Count II of plaintiffs' complaint which, as discussed above, plaintiffs have voluntarily dismissed.

sued. 815 ILCS § 505/1, 10(a). In addition, numerous cases have permitted officers, directors and stockholders to be named as individual defendants under ICFA, where they were personally involved in the activities which gave rise to the cause of action. *See Moore v. Fidelity Financial Services, Inc.,* 949 F.Supp. 673 (N.D.Ill.1997); *People ex rel. Hartigan v. All American Aluminum & Construction Co.,* 171 Ill.App.3d 27, 121 Ill.Dec. 19, 524 N.E.2d 1067 (1st Dist.1988) (officer and controlling shareholder held liable for ICFA violation); *People ex rel Fahner v. American Buyers Club, Inc.,* 115 Ill. App.3d 759, 71 Ill.Dec. 216, 450 N.E.2d 904 (3d Dist.1983) (president and principal shareholder held liable for ICFA violation); *Garcia v. Overland Bond & Investment Co.,* 282 Ill.App.3d 486, 218 Ill.Dec. 36, 668 N.E.2d 199 (1996) (Ill.App. 1st 1996). It would clearly be inappropriate to grant Zachary's motion on that ground.

■ However, defendant Zachary next argues that even if Zachary is properly named as an individual defendant, plaintiffs have failed to meet their burden of pleading under ICFA because their complaint is not pled with specificity, as required by Illinois law. *Gallagher Corp. v. Massachusetts Mut. Life Ins. Co.,* 940 F.Supp. 176, 180 (N.D.Ill.1996). In particular, a plaintiff must state the "identity of the persons making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Schiffels v. Kemper Fin. Svcs.,* 978 F.2d 344, 352 (7th Cir.1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992)).

With respect to this argument, we agree with defendant Zachary. In Count IV, plaintiffs allege that Zachary engaged in two "unfair and deceptive practices" in violation of ICFA. First, they claim that Zachary arranged the financing for their construction work in such a manner that caused them to be left without recourse in the event Beneficial Construction did not finish the job (Cplt. ¶ 102(a)). Second, plaintiffs claims that Zachary failed to finish the work and thereby caused their damage (Cplt. ¶ 102(b)). Beyond that, the only other allegations relevant to Count IV are in the complaint's statement of facts where plaintiffs allege that Beneficial Construction referred plaintiffs—and had previously referred other of its clients—to Datro and the lenders that they allege defrauded them.

■ These allegations are not sufficient to state a claim against Zachary. At a minimum, we find that he is entitled to somewhat more specificity. ICFA prohibits the use of unfair and deceptive practices by use of misrepresentation, fraud or the concealment of fact with the intent that others rely upon the deception. 815 ILCS 505/2. Plaintiffs, however, never tell us what misrepresentations Zachary allegedly made to them. We accept as true the allegation that Zachary referred plaintiffs to Dolphin Mortgage and George Datro, as well as the allegation that plaintiffs had no recourse against their lenders after Beneficial Construction ceased performance, but this does not mean that Zachary intended to defraud them or even that he knew that Dolphin was (allegedly) merely a pass-through to GB Home Equity and Guaranty Bank, rather than being a true mortgage broker. In short, although Zachary may have made the referral, absent any allegation that he knew Dolphin was a fraudulent entity, we fail to see how the referral could constitute a misrepresentation, lie or omission of material fact as ICFA requires. *Id.*

■ Similarly, the fact that plaintiffs claim that Zachary ceased work after the flood and failed to finish the job does not, alone, constitute an unfair or deceptive act. As explained, plaintiffs must allege some sort of fraud or misrepresentation that goes beyond a common law breach of contract claim in order to proceed under ICFA. Accordingly, we grant Zachary's motion to dismiss Count IV with leave to amend within 20 days.

## B. Count IX and X: The Illinois Consumer Fraud Act

Zachary next moves to dismiss Counts IX and X. In Count IX, plaintiffs allege that Beneficial Construction and Zachary violated ICFA, 815 ILCS 505/2, 2E and 2F when Guaranty Bank and GB Home Equity collected finance, delinquency, collection and refi-

nance charges from plaintiffs, even though such collection was barred by the Illinois Retail Installment Sales Act (RISA), 815 ILCS 405/1 *et seq.* In Count X, plaintiffs allege that Beneficial Construction and Zachary violated the same sections of Illinois law by concealing the interest rate on plaintiffs' loans, misrepresenting that no interest rate would be paid, and including coercive and unconscionable credit provisions in the construction contract.

As previously discussed, ICFA Section 505/2 provides that no. one use unfair or deceptive practices in the conduct of any trade or commerce. ICFA § 2E provides that a person who violates certain other Illinois consumer protection laws may be subject to liability under ICFA. Section 2F prohibits sellers from charging a different price to cash purchasers than they do purchasers using credit in transactions covered by ICFA.

Zachary argues that these counts should be dismissed because they allege only that *Beneficial Construction* committed certain acts in violation of ICFA and do not refer to actions taken by *Zachary.* We disagree. In federal court a plaintiff need only plead facts sufficient to put a defendant on notice of the plaintiff's claim for relief. *See* Fed.R.Civ.P. 8(a) (providing that a plaintiff is required to make only a short, plain statement of the claim that shows the pleader is entitled to relief.) As discussed earlier, it is clear that the officers and directors of corporations can be held liable for violations of ICFA. 815 ILCS § 505/1, 10(a). Additionally, we observe that both Counts IX and X incorporate by reference paragraph 7 of the complaint, which provides:

> Defendant George Zachary ("Zachary") is the president of Beneficial Construction. On information and belief, he is also its owner, and has complete control over its business practices and conduct. The only other officer of Beneficial Construction is Constance Zachary, who on information and belief is the wife of George Zachary.

We believe that this statement, taken in conjunction with the statements in Count IX and X regarding Beneficial Construction and Zachary, is sufficient to state a claim under ICFA against Zachary. We accordingly deny Zachary's motion to dismiss Counts IX and X.

**V. Jurisdiction**

This court has subject matter jurisdiction over this action because several of the claims present questions of federal law. 28 U.S.C. § 1331. Pursuant to this jurisdiction, the court has supplemental jurisdiction over all claims sufficiently related to the claim on which its original jurisdiction is based. 28 U.S.C. § 1367(a). State claims will be deemed "sufficiently related" to the core claim if they are part of the same "case or controversy," or if they arise from a "common nucleus of operative facts" and the federal claim is sufficiently substantial to confer subject matter jurisdiction in the court. *Argento v. Village of Melrose Park*, 838 F.2d 1483 (7th Cir.1988).

In this case, all of plaintiffs' surviving claims clearly arise from the same factual circumstances. In addition, we retain original jurisdiction over Count I, which is brought under RESPA and is still pending against three of the named defendants (Guaranty Bank, GB Home Equity, and Dolphin Mortgage), at least until plaintiffs amend their complaint, if they so choose, and/or formally move to dismiss Guaranty Bank. Additionally, we retain original jurisdiction over Counts VI and VII, both of which are brought under the Truth in Lending Act and are still pending against Guaranty Bank and GB Home Equity, at least, again, until plaintiffs amend their complaint and/or formally move to dismiss Guaranty Bank. Finally, we retain original jurisdiction over Count VIII, which is brought under the Truth in Lending Act and still pending against Beneficial Construction. In total, these federal claims are more than substantial enough to confer subject matter jurisdiction on this court and, consequently, supplemental jurisdiction over all of the related claims. Accordingly, for the time being this court will retain jurisdiction over plaintiffs' entire remaining action.

### CONCLUSION

For the aforestated reasons we reach the following conclusions: Defendant Dolphin's

motion to dismiss Counts I and V is denied; defendant Datro's motion to dismiss Count I is granted, and its motion to dismiss Count V is denied; defendant Zachary's motion to dismiss Counts IV, IX and X is granted entirely. Finally, plaintiffs' have dismissed Count II from this case. Plaintiff has leave to amend those counts that were dismissed within 20 days.